IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE:                          )
                                )        CASE NO.  11-80145-JAC-11
KLEEN AIR RESEARCH, INC..       )
                                )        CHAPTER 11
        Debtor                  )

**MOTION FOR AUTHORIZATION TO USE CASH COLLATERAL**

COMES NOW, Kleen Air Research, Inc. ("Debtor"), as a debtor-in-possession in the above-styled matter, and pursuant to 11 U.S.C. §§ 361 and 363 of the Bankruptcy Code, requests this Court for authorization to use cash collateral.  In support, Debtor states as follows:

JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.  This is a core matter proceeding pursuant to 28 U.S.C. §157(b).  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

BACKGROUND

2.      Kleen Air Research, Inc., is an Alabama corporation with its principal place of business at 4510 Helton Drive, Florence, Alabama 35769.

3.      Debtor is engaged in the business of providing heating, ventilating, and air conditioning ("HVAC") filtration services and sales to individual and commercial clients.

4.      On or about March 28, 2008, Debtor and Pinnacle National Bank ("Pinnacle") executed certain loan documents, namely the "Loan Agreement" and "Note For Business And Commercial Loans", whereby Pinnacle extended Debtor a line of credit in the amount of

1

$3,500,000.00. That same day, Debtor and Pinnacle entered into the "Commercial Security Agreement" whereby Debtor granted Pinnacle a security interest in all of Debtor's accounts receivables and inventory. Pinnacle filed its UCC financing statement covering Debtor's accounts receivable and inventory on or about July 7, 2008.

5.      On April 29, 2009, the Note was renewed and the maximum line of credit reduced to $2,500,000.00 and on July 30, 2009, the Note was renewed and the maximum line of credit reduced to $2,150,000.00. Said renewals were memorialized in the "First Amendment To Note For Business And Commerical Loans"and "Commercial Security Agreement" executed by Debtor and Pinnacle on or about July 30, 2009. As security for the Renewal Note, Pinnacle purportedly took a security interest in all of Debtor's assets and executed guaranties with various other individuals and entities. Pinnacle filed an amended UCC financing statement on August 11, 2009, covering all assets of the Debtor.

6.      On June 29, 2010, the Note was again renewed and the maximum line of credit reduced to $2,052,812.00. This renewal was memorialized in the "Second Amendment To Note For Business And Commercial Loans" and "Second Amendment To Loan Agreement." As security for the Second Renewal Note, Debtor and Pinnacle entered into a "Security Agreement" whereby Debtor purportedly granted Pinnacle a security interest in additional collateral, further described in a list of company vehicles included with the Security Agreement.

7.      As a result of the foregoing loan transactions, Debtor currently owes approximately $2,053,000.00 to Pinnacle, which is Debtor's largest creditor. In addition, Debtor owes other secured creditors approximately $500,000.00 and has existing accounts payable in the amount of $1,000,000.00.

8.     The current approximate book value of the collateral pledged to Pinnacle is approximately $2,000,000.00, consisting of approximately $1,400,000.00 in accounts receivable and $600,000.00 in inventory.  Pinnacle also claims a lien on other assets of the Debtor and a mortgage interest in third-party property valued at $500,000.00.

REASONS FOR FILING CHAPTER 11

9.     Debtor has operated as a business since 1981, providing commercial and individual HVAC filtration sales and services to customers across the United States.  At its peak, Debtor received approximately $20 million dollars in annual revenue.

10.     In early 2009, Debtor lost to a higher bidder major contracts with two national companies.  The loss of these contracts resulted in a loss of about 40% of Debtor's total annual revenue.

11.     During 2009 and 2010, Debtor downsized its business operations from a national market to a regional market.  As part of its downsizing efforts, Debtor shut down numerous satellite offices, sold unnecessary assets, and laid off approximately half of its total employees.

12.     As a result of the foregoing, Debtor's gross annual revenue has declined to approximately $10 million dollars annually.

13.     On January 14, 2011, the Debtor petitioned this Court for Chapter 11 bankruptcy relief pursuant to 11 U.S.C. § 101, et seq.

14.     Debtor plans to continue to operate its business and manage its properties as a debtor in possession under §§ 1107(a) and 1108 of the Bankruptcy Code.  Through the filing of this Chapter 11 petition, Debtor seeks to accomplish a successful reorganization of its business, which will allow Debtor post-confirmation to continue to operate its business.

15.     Pre-petition, Debtor entered into various loan agreements with Pinnacle whereby the Bank extended Debtor a line of credit in exchange for a security interest in certain assets of the Debtor.

16.     The accounts receivable and inventory which are subject to the existing security agreements constitute "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code. Section 363(c)(2) prohibits a debtor from utilizing cash collateral with the consent of such party or absent Court approval.

17.     Pursuant to § 363(c)(2)(B), Debtor seeks authorization from this Court, after notice and hearing, to use the cash collateral of Pinnacle pursuant to the terms and conditions encompassed within this Court's Order Granting Adequate Protection and Permitting Use of Cash Collateral (the "Cash Collateral Agreement").

18.     Debtor's only source of cash for the continued operation of its business is operating revenue, which is cash collateral. Debtor has an immediate need for authority to continue to use the cash collateral in its ongoing business operations. If Debtor is not permitted to use the cash collateral, it will have to shut down its business hindering any prospects of future reorganization.

19.     Debtor will submit monthly budgets to the Court and Pinnacle indicating the amount of money used in business operation expenses. As adequate protection for the use of the cash collateral the Debtors propose to provide a replacement lien in post-petition accounts receivable and inventory.

**WHEREFORE**, the Debtor respectively requests this Court to enter an Order permitting use of cash collateral upon the terms and conditions stated herein, and to grant such other and further

relief as this Court deems just and proper.

Respectfully submitted this 14th day of January, 2011.

/s/ Stuart M. Maples
Stuart M. Maples

STUART M. MAPLES
CHARLES A. RAY, IV.
DEANNA S. SMIITH
MAPLES & RAY, P.C.
401 Holmes Avenue, Suite H
Huntsville, Alabama  35801
(256) 489-9779 – Telephone
dsmith@maplesandray.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing properly addressed, postage prepaid, via United States Mail or electronic mail on the following on this the 14th day of January, 2011.

Richard M. Blythe, Esquire
U.S. Bankruptcy Administrator
P.O. Box 3045
Decatur, AL   35602

Pinnacle Bank
c/o Robert A. McCabe, Jr., RA
150 Third Ave. S., Suite 900
Nashville, TN   37201

Regions Bank
c/o CSC Layers Inc. Svc.
150 S. Perry St.
Montgomery, AL   32260

20 Largest Creditors

/s/ Stuart M. Maples
Stuart M. Maples